## S89A0251. HARRISON v. THE STATE.
(384 SE2d 643)

Marshall, Chief Justice.

The appellant, Bobby Harrison III, was convicted of the murder of Glen Johnson, and he was given a sentence of life imprisonment. In this appeal, the appellant argues that there was insufficient corroboration of the testimony of his accomplice, that the evidence was insufficient to authorize the jury in finding the appellant guilty beyond a reasonable doubt, and that the cross-examination of a defense witness was conducted in an impermissible manner. For reasons which follow, we find these arguments to be without merit, and we thus affirm.[1]

Approximately two weeks prior to the victim's death, the appellant and Wendell Morris were involved in a street fight. At that time, Alan Brumbrey accompanied the appellant. Wendell Morris testified that although the victim, who was Wendell Morris' cousin, was not present when the foregoing altercation began, he arrived on the scene before the fight was over. Walter Brumbrey, who is Alan Brumbrey's brother, testified that Alan had told him that the victim had held a broken glass bottle on him in order to prevent him from helping the appellant when the appellant was being beaten up by Morris.

On or about June 18, 1988, at approximately 10:00 or 10:30 p.m., the victim went to a "shot house" in order to purchase a drink. Seated in the living room at the time of the victim's arrival were the appellant, and Alan and Walter Brumbrey. According to Nina Harris, who lives in the house, they were discussing the fight between the appellant and Wendell Morris. The appellant said that, "somebody had hit him in the head with a brick, and if he couldn't get the uncle back he was going to get the cousin back." The appellant and Alan Brumbrey were overheard saying, "They going to get him. You read about us in the papers."

---

[1] The crime was committed on or about June 18, 1988. The jury returned its verdict of guilty on November 30, 1988. A motion for new trial was filed on December 9, 1988, and it was denied on May 8, 1989. The transcript of evidence was filed on June 28, 1989. The appeal was docketed in this court on July 13, 1989, and oral argument in the case took place on September 20, 1989.

At approximately 10:45 p.m., the victim left the house, and, within the next five minutes, the appellant and the Brumbreys also left. They were yelling at the victim, saying "hold up, hold up." And, Alan Brumbrey was overheard saying, "We going to get him." Appellant and the Brumbreys caught up with the victim; shortly thereafter, Walter Brumbrey left the group, and the remaining three continued walking down the street in the direction of a recreation center.

Alan Brumbrey was also indicted for the murder of Glen Johnson. However, he pleaded guilty to a charge of voluntary manslaughter, and he testified against the appellant at trial.

He testified that they planned to "rough [the victim] up,. . .beat him up." They told him that they had some cocaine, and they convinced him to go behind the recreation center with them on the pretense of using the cocaine. When they got behind the recreation center, the appellant took a swing at the victim, who attempted to run. The appellant caught up with him, and tripped him; he then got on top of him and began hitting him with his fist and stomping him. The victim got up and again began running; as the appellant was pursuing him, the victim fell down in the area of a creek. When the appellant reached the victim, he began hitting him again. Brumbrey arrived on the scene and suggested that they leave. The appellant then attempted to pick the victim up, and he either threw the victim or kicked the victim into some bushes. The appellant and Brumbrey then left.

Three days later, on June 21, 1988, the victim's body was found in the creek behind the recreation center, and the area in which the body was found was muddy. Debra Jones, who is Alan Brumbrey's girl friend, testified that when the appellant and Alan Brumbrey left her house on the day of the victim's death, their clothes were clean, and when they returned, the appellant's clothes were "[n]asty, muddy. . . .They had been hardened like paint." In cross-examining this witness, defense counsel established that the appellant worked for a construction company, and he suggested that the hardened material on his clothes consisted of asphalt.

The medical examiner performing an autopsy on the victim testified that it was his opinion that the victim died as a result of "a blunt-force injury to the head."

The appellant testified at trial that Alan Brumbrey had told him that he was going to beat up the victim. He further testified that the three of them left the shot house, and they smoked some marijuana together. According to the appellant, he then left Brumbrey and the victim, who continued walking down the street. Finally, the appellant testified that he did not fight the victim, although when he saw Brumbrey later that evening, Brumbrey had blood on his shoes.

Other evidence will be discussed insofar as is necessary for a reso-

lution of the issues raised on appeal.

1. At the outset, the appellant argues that the trial court erred in denying his motion for directed verdict of acquittal, in that there was insufficient corroboration of the testimony of his accomplice.

> "The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt." *Price v. State*, 208 Ga. 695 (3a) (69 SE2d 253); *Allen v. State*, 215 Ga. 455 (2) (111 SE2d 70); *Pritchard v. State*, 224 Ga. 776, 778 (164 SE2d 808).

*Slocum v. State*, 230 Ga. 762, 764 (2) (199 SE2d 202) (1973). However,

> "[t]he sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient. See *Slocum v. State*, [supra]." *Carter v. State*, 237 Ga. 617, 618 (229 SE2d 411) (1976). Contrary to appellant's assertions, "[t]he necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. *Williams v. State*, 222 Ga. 208, 220 (149 SE2d 449) (1966)." *Drake v. State*, 241 Ga. 583, 586 (247 SE2d 57) (1978).

*Berry v. State*, 248 Ga. 430, 432 (1) (283 SE2d 607) (1981).

We hold that the evidence reviewed earlier in this opinion was legally sufficient to directly connect the appellant with, and give rise to an inference that he participated in, the murder of Glen Johnson. Cf. *Askew v. State*, 135 Ga. App. 56 (2) (217 SE2d 385) (1975) and cit.

2. Likewise, the evidence was sufficient, under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to convict the appellant of the offense of murder.

3. The appellant's final argument is that the trial court erred in examining a defense witness, and in allowing the state to cross-examine the defense witness, in regard to the reasons underlying the witness' past incarceration, as well as his incarceration at the time of the appellant's trial.

As part of his case-in-chief, the appellant called Danny Allen to

the stand as a defense witness. Allen testified that he had been in jail with the appellant's co-indictee, Alan Brumbrey, and that Brumbrey had stated to him that it was actually he, Brumbrey, who had murdered Glen Johnson.

On cross-examination, the prosecuting attorney questioned Allen concerning his attempts to negotiate the dismissal of criminal charges against him in return for his testifying against Brumbrey.

Over objection by the defense, during cross-examination the prosecutor asked this witness what he was in jail for, and the witness responded that he had been in jail for murder; he later testified on cross-examination that there was also a cocaine charge against him and that the cocaine charge had been dropped. On redirect examination, defense counsel asked Allen what the disposition of the murder charge had been, and he responded that he had been acquitted. The trial judge, without objection, then asked the witness if he was in jail at the time of trial, and it was then established that he was in jail as the result of a parole violation and that he was on parole for involuntary manslaughter.

The appellant's argument is that, under rules of evidentiary law, a witness cannot be impeached by evidence of an arrest or indictment prior to conviction, and, in any event, in impeaching a witness by use of the fact that he has committed a crime involving moral turpitude, it is necessary to introduce a certified copy of the conviction. *Richards v. State*, 157 Ga. App. 601 (2) (278 SE2d 63) (1981) and cits.

It is generally permissible to impeach a witness by proof of conviction of a crime involving moral turpitude. Agnor, Ga. Evid., § 5-8. Under the best-evidence rule, a certified copy of the conviction is the requisite method of proof; however, the best-evidence rule is waivable, and if no objection is raised, the criminal conviction may be proved through the testimony of the witness. *Fincher v. Frost*, 225 Ga. 408 (2) (169 SE2d 309) (1969); Agnor, Ga. Evid., supra.

We hold, however, that the prosecutor's cross-examination of this witness did not constitute impeachment of the witness by proof of a criminal conviction; rather, the prosecutor was cross-examining the witness concerning the criminal charges surrounding his incarceration, in order to reveal possible biases, prejudices, or ulterior motives of the witness as they might relate to his testimony on direct examination. See OCGA § 24-9-64;[2] *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982). Accord *Phillips v. State*, 254 Ga. 370, n. 2 (329 SE2d 475) (1985), aff'ing 171 Ga. App. 827 (321 SE2d 393) (1984) (Benham, J., concurring specially). We find no error.

---

[2] OCGA § 24-9-64 provides, in pertinent part, that "[t]he right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him. . . ."

In addition, the appellant's failure to object to the trial judge's examination of the witness constitutes a waiver precluding the appellant from raising this issue on appeal. E.g., *Shirley v. State*, 254 Ga. 723 (334 SE2d 154) (1985).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 19, 1989.

*E. Earl Seals*, for appellant.

*William G. Hamrick, Jr.*, District Attorney, *Michael J. Bowers*, Attorney General, *Leonora Grant*, for appellee.